Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
William M. Pao (SBN 219846)
william@setarehlaw.com
Nolan Dilts (SBN 328904)
nolan@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Blvd., Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
KENNETH SMITH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

KENNETH SMITH, on behalf of himself, all others similarly situated, and the general public,

*Plaintiff,*

vs.

9W HALO WESTERN OPCO L.P., doing business as ANGELICA, a Delaware corporation; 9W HALO PARENT LLC, a Delaware corporation; KKR ILP LLC, a Delaware corporation; KKR-VRS CREDIT PARTNERS, L.P., a Delaware corporation; 9W HALO HOLDINGS L.P., a Delaware corporation; 9W HALO GP LLC, Delaware corporation; 9W HALO INTERMEDIATE HOLDINGS L.P. a Delaware corporation; 9W HALO OPCO L.P. a Delaware corporation; and DOES 1 through 50, inclusive,

*Defendants.*

Case No. 4:20-cv-01968-PJH

Assigned For All Purposes to the Honorable Phyllis J. Hamilton, Courtroom 3

**CLASS AND REPRESENTATIVE ACTION**

**THIRD AMENDED COMPLAINT**

1. Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198);
2. Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198);
3. Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198);
4. Failure to Pay Vacation Wages (Lab. Code § 227.3);
5. Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a));
6. Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203);
7. Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*);
8. Civil Penalties (Lab. Code §§ 2698 *et seq.*);

**JURY TRIAL DEMANDED**

COMES NOW, Plaintiff KENNETH SMITH ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, complains and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this class action against Defendants 9W HALO WESTERN OPCO L.P., doing business as ANGELICA, a Delaware corporation ("Angelica"); 9W HALO PARENT LLC, a Delaware corporation; KKR ILP LLC, a Delaware corporation; KKR-VRS CREDIT PARTNERS, L.P., a Delaware corporation; 9W HALO HOLDINGS L.P., a Delaware corporation; 9W HALO GP LLC, Delaware corporation; 9W HALO INTERMEDIATE HOLDINGS L.P. a Delaware corporation; 9W HALO OPCO L.P. a Delaware corporation; and DOES 1 through 50, inclusive (collectively referred to as "Defendants") for alleged violations of the Labor Code and Business and Professions Code. As set forth below, Plaintiff alleges that Defendants have

(1) failed to provide him and all other similarly situated individuals with meal periods;

(2) failed to provide them with rest periods;

(3) failed to pay them premium wages for missed meal and/or rest periods;

(4) failed to pay them premium wages for missed meal and/or rest periods at the regular rate of pay;

(5) failed to pay them at least minimum wage for all hours worked;

(6) failed to pay them overtime wages at the correct rate;

(7) failed to pay them double time wages at the correct rate;

(8) failed to pay them overtime and/or double time wages by failing to include all applicable remuneration in calculating the regular rate of pay;

(9) failed to pay them for all vested vacation pay;

(10) failed to reimburse them for all necessary business expenses;

(11) failed to provide them with accurate written wage statements; and

(12) failed to pay them all of their final wages following separation of employment.

Based on these alleged Labor Code violations, Plaintiff now brings this class and

representative action to recover unpaid wages, restitution and related relief on behalf of himself, all others similarly situated, and the general public.

## JURISDICTON AND VENUE

2. This Action was filed in the Superior Court of the State of California.

3. ANGELICA was served on or about February 21, 2020. (Declaration of Christopher Alvarez ("Alvarez Decl."), ¶ 3; ECF 1.2.)

4. On March 20, 2020, Defendants removed this action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (ECF 1.)

## PARTIES

5. Plaintiff KENNETH SMITH is, and at all relevant times mentioned herein, an individual residing in the State of California.

6. Plaintiff is informed and believes, and thereupon alleges that Defendant 9W HALO WESTERN OPCO L.P. doing business as ANGELICA ("Angelica") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California.

7. Plaintiff is informed and believes, and thereupon alleges that Defendant 9W HALO OPCO L.P. ("Halo OPCO") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California and a limited partner of Angelica.

8. Plaintiff is informed and believes, and thereupon alleges that Defendant 9W HALO INTERMEDIATE HOLDINGS L.P. ("Halo Intermediate") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California and a limited partner of Halo OPCO.

9. Plaintiff is informed and believes, and thereupon alleges that Defendant 9W HALO HOLDINGS L.P. ("Halo Holdings") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California and a limited partner of Halo Intermediate.

10. Plaintiff is informed and believes, and thereupon alleges that Defendant 9W HALO PARENT LLC ("Halo Parent") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California and a general partner of Halo Holdings.

11. Plaintiff is informed and believes, and thereupon alleges that Defendant 9W HALO

GP LLC ("Halo GP") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California and a general partner of Angelica, Halo Intermediate, and Halo OPCO.

12. Plaintiff is informed and believes, and thereupon alleges that Defendant KKR ILP LLC ("KKR ILP") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California and a general partner of Halo Holdings.

13. Plaintiff is informed and believes, and thereupon alleges that Defendant KKR-VRS CREDIT PARTNERS, L.P. ("KKR Credit") is, and at all relevant times mentioned herein was, a Delaware corporation doing business in the State of California and a limited partner of Halo Holdings.

14. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants when ascertained. Plaintiff is informed and believes, and thereupon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences, acts and omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these defendants, and each of them. Plaintiff will amend this complaint to allege both the true names and capacities of the DOE defendants when ascertained.

15. Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some or all of the defendants were the representatives, agents, employees, partners, directors, associates, joint venturers, principals or co-participants of some or all of the other defendants, and in doing the things alleged herein, were acting within the course and scope of such relationship and with the full knowledge, consent and ratification by such other defendants.

16. Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some of the defendants pursued a common course of conduct, acted in concert and conspired with one another, and aided and abetted one another to accomplish the occurrences, acts and omissions alleged herein.

///

**CLASS ALLEGATIONS**

17. This action has been brought and may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

18. **Relevant Time Period**: The relevant time period is defined as the time period beginning after Angelica filed for Bankruptcy, which based upon information and belief is September 26, 2017, through judgment.

> **Hourly Employee Class**: All persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the **Relevant Time Period**.
>
> > **Meal Period Sub-Class**: All **Hourly Employee Class** members who worked in a shift in excess of five hours during the **Relevant Time Period**.
> >
> > **Rest Period Sub-Class**: All **Hourly Employee Class** members who worked a shift of at least three and one-half (3.5) hours during the **Relevant Time Period**.
> >
> > **Wage Statement Penalties Sub-Class**: All **Hourly Employee Class** members employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.
> >
> > **Waiting Time Penalties Sub-Class**: All **Hourly Employee Class** members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.
>
> **UCL Class**: All **Hourly Employee Class** members employed by Defendants in California during the **Relevant Time Period**.
>
> **Vacation Pay Class**: All persons employed by Defendants in California who earned paid vacation days, including but not limited to, "Floating Holidays," without receiving compensation for each vested paid vacation day during the **Relevant Time Period**.

19. **Reservation of Rights**: Plaintiff reserves the right to amend or modify the class definitions with greater specificity, by further division into sub-classes and/or by limitation to particular issues.

20. **Numerosity**: The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges that the actual number

exceeds the minimum required for numerosity under California law.

21. **<u>Commonality and Predominance</u>:** Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members. These common questions include, but are not limited to:

A. Whether Defendants maintained a policy or practice of failing to provide employees with their meal periods;

B. Whether Defendants maintained a policy or practice of failing to provide employees with their rest periods;

C. Whether Defendants failed to pay premium wages to class members when they have not been provided with required meal and/or rest periods;

D. Whether Defendants failed to pay minimum and/or overtime wages to class members as a result of policies that fail to provide meal periods in accordance with California law;

E. Whether Defendants failed to pay minimum and/or overtime wages to class members for all time worked;

F. Whether Defendants failed to pay overtime wages to class members as a result of incorrectly calculating their regular rates of pay;

G. Whether Defendants failed to pay premium wages to class members based on their respective "regular rates of compensation" by not including commissions and/or other applicable remuneration in calculating the rates at which those wages are paid;

H. Whether Defendants failed to provide proportionate accruals for vested vacation time for class members as required by California law;

I. Whether Defendants failed to reimburse class members for all necessary business expenses incurred during the discharge of their duties;

J. Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net

wages, and total hours worked;

K. Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

L. Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

M. Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition;

22. **Typicality:** Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes and thereupon alleges that Defendants have a policy or practice of failing to comply with the Labor Code and Business and Professions Code as alleged in this Complaint.

23. **Adequacy of Class Representative:** Plaintiff is an adequate class representative in that he has no interests that are adverse to, or otherwise conflict with, the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf. Plaintiff will fairly and adequately represent and protect the interests of the other class members.

24. **Adequacy of Class Counsel:** Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

25. **Superiority:** A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make I difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the

potential for inconsistent or contradictory judgments inherent in individual litigation.

**GENERAL ALLEGATIONS**

26. Plaintiff worked for Defendants as a non-exempt, hourly employee from approximately November 9, 2017 to May 6, 2019. Plaintiff is informed and believes, and thereupon alleges that ANGELICA was owned, operated and controlled by and through the other Defendants, Halo Parent, KKR ILP, KKR Credit, Halo Holdings, Halo GP, Halo Intermediate, and Halo OPCO (collectively "Halo Entities").

27. Defendants are deemed to be employers of Plaintiff and the putative class under the "right to control" test enunciated in *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations* (1989) 48 Cal. 3d 341, or the three-factor test set out in *Martinez v. Combs* (2010) 49 Cal. 4th 35, 64, in that they:

a. Exercised control over wages, hours or working conditions; or

b. Suffered or permitted to work; or

c. Engaged, thereby creating a common law employment relationship.

28. Upon information and belief, on or about June 30, 2017, the Halo Entities acquired substantially all of ANGELICA's assets.

29. Upon information and belief, the Halo Entities control the operations of ANGELICA such that they have the ability to control the working conditions of Plaintiff and the putative class, the wages that they are paid, and the hours that they work.

30. Upon information and belief, the Halo Entities comprise the officers and decision-makers of ANGELICA who violate or cause to be violated provisions of the Industrial Welfare Commission and California Labor Code. (*See* Cal. Lab. Code § 558.1(a))

31. Upon information and belief, the Halo Entities maintain control of Angelica's assets and liabilities.

**Missed/Shortened Meal Periods**

32. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of requiring Plaintiff and the aggrieved employees to wait in a long line to clock in and out for their meal periods. All 150+ employees at Defendants

facility would be released for their meal periods at the same time and accordingly, Plaintiff and the aggrieved employees would wait anywhere from 1-5 minutes to clock in and out for their meal periods every day, all time that was uncompensated by Defendants. All time spent waiting in these lines would cut into the time allotted for Plaintiff and the aggrieved employees for meal periods resulting in shortened and interrupted meal periods.

33. Additionally, Plaintiff and the aggrieved employees were denied their legally mandated meal periods of 30 minutes or more for each five hours worked due to the constant malfunctioning of Defendant's facilities. Specifically, the machines that were utilized by Plaintiff and the aggrieved employees for their work duties would break down on an exceedingly frequent basis. Furthermore, the generator that powered the entire facility would also be the cause of constant issues for Plaintiff and the aggrieved employees as it would malfunction at least once a week and cause all work operations to stop until it was back up. On the occasions that this occurred, Plaintiff and the aggrieved employees would be sent home or be made to stand by until the facility was operational at which time they would be called back to work until all of the tasks for the day had been completed. When this happened, Plaintiff and the aggrieved employees would be denied meal periods as Defendants would tell them that the time that they spent waiting for the facility to become operational again counted as their meal periods. Accordingly, Plaintiff and the aggrieved employees were frequently denied compliant meal periods.

34. Plaintiff alleges that, at relevant times during the applicable limitations period, Defendants maintained a policy or practice of disciplining Plaintiff and members of the aggrieved employees, up to and including termination, if they did not clock back in from their meal periods on time.

35. Plaintiff alleges that, at relevant times during the applicable limitations period, due to Defendants above-mentioned policy or practice, Plaintiff and the aggrieved employees did not receive their full thirty (30) minutes uninterrupted meal periods that they were entitled under California law.

**Missed Meal Periods and Auto-Deduct**

36. During their employment with Defendants, Plaintiff and the aggrieved employees

regularly worked shifts of eight to twelve hours per day, without being afforded a meal break during the first five hours, and/or a second meal break after ten hours, as required by California law. Defendants had a policy of automatically deducting thirty minutes from Plaintiff and the aggrieved employee's paycheck, regardless of whether Plaintiffs took a lunch break or not.

37. Plaintiffs and the aggrieved employees were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Long lines of at least 150 people all clocking in and out for their meal periods at the same time; (2) The machines that Plaintiff and the aggrieved employees were made to utilize as part of their work duties breaking down on a frequent basis causing them to have to work through their meal periods to catch up; and (3) the power at Defendants facility frequently going out causing Plaintiff and the aggrieved employees to have to work through their meal periods to catch up.

38. As a result of Defendants' policy, Plaintiffs and the aggrieved employees were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked due to complying with Defendants' productivity requirements that required Plaintiffs and the aggrieved employees to work through their meal periods in order to complete their assignments on time.

**<u>Clocking In/Off-the-Clock</u>**

39. Plaintiff and the aggrieved employees were trained to clock in using the badge assigned to them and to swipe their badge at the entrance to the facility or in the break room. The machine being used to read Plaintiff and the aggrieved employees badges caused them frequent problems in registering their badges and additionally crashed completely on numerous occasions. When this would occur, Plaintiff and the aggrieved employees would have to have a manager manually enter their times which at many times was not reflective of the actual time that they arrived for work duties

**<u>Clocking Out/Off-the-Clock</u>**

40. Plaintiff and the aggrieved employees would experience similar issues upon clocking out with their badges and the computers that would read them. As mentioned above, the badges would frequently not register in the machine and the entire machine would crash on numerous

occasions. Similarly, Plaintiff and the aggrieved employees would have to get a manager to manually enter their clock out times after their shifts which were not reflective of the actual time that they ceased their work duties for the day.

**Missed Rest Periods**

41. Plaintiff and the aggrieved employees were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each rest period as part of each work shift; (2) the machines that Plaintiff and the aggrieved employees were made to utilize breaking down and requiring maintenance causing them to work through their rest periods to catch up; and (3) the power at Defendants facilities going out on a frequent basis causing Plaintiff and the aggrieved employees to have to work through their rest periods to catch up.

42. Specifically, Plaintiff and the aggrieved employees were regularly not provided rest periods of at least 10 minutes for every four hours worked due to the constant malfunctioning of the machines and generators of the facility. Plaintiff and the aggrieved employees would be made to wait until the facility was operational before they could return to work. On these days where this would occur, Plaintiff and the aggrieved employees would be made to work nonstop until all of the tasks for the day had been completed and were told that their rest breaks were factored into the time that they were made to spend waiting for the facility to get back into working order.

43. As a result of Defendants' policy, Plaintiff and the aggrieved employees were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the aggrieved employees to work through their rest periods in order to complete their assignments on time.

**Off-the-Clock Work**

44. Plaintiff and the aggrieved employees were not paid all wages earned as Defendants directed, permitted or otherwise encouraged Plaintiff and the aggrieved employees to perform off-the-clock work.

///

45. Plaintiff and the aggrieved employees were regularly made to work off-the-clock, both overtime and otherwise, and were at no point compensated by Defendants for this time. Specifically, Plaintiff and the aggrieved employees would be told that they had to cease their work operations when the machines and power in the facility would break down and go out. This was an event that occurred at least once and as many as three times per week and was a process that could take anywhere from 30 minutes to 3 hours. Plaintiff and the aggrieved employees would be made to wait for the facility to become operational again, all time spent off-the-clock, and would work for as long as was required of them afterwards. Plaintiff and the aggrieved employees were in no way ever compensated for the time spent waiting for the facility to be repaired and in working order before they could go back to work.

46. Furthermore, in the event that these malfunctions occurred, Plaintiff and the aggrieved employee's time sheets would not be reflective of these interruptions. Specifically, Defendants would log their hours worked as from 5am until 1:30pm, their regularly scheduled shifts, regardless of the time that they were actually permitted to leave the facility for the day. For example, if Plaintiff and the aggrieved employees were made to wait for two hours for the machines or generators to be maintenanced from 12pm-2pm, and have to work from 2pm-4pm to complete their tasks for the day, their time sheets would still reflect that they worked from 5am to 1:30pm. Whereas in reality, Plaintiff and the aggrieved employees were at the facility for 11 hours or more and thus entitling them to overtime pay, their time sheets would only reflect that they were working for 8 hours.

47. As a result of performing off-the-clock work that was directed, permitted or otherwise encouraged by Defendants, Plaintiff and the aggrieved employees should have been paid for this time. Instead, Defendants only paid Plaintiff and the aggrieved employees based on the time they were clocked in for their shifts and did not pay Plaintiff and the aggrieved employees for any of the time spent working off-the-clock.

48. Defendants knew or should have known that Plaintiff and the aggrieved employees were performing work before and after their scheduled work shifts and failed to pay Plaintiff and the aggrieved employees for these hours.

49. Defendants were aware of this practice and directed, permitted or otherwise encouraged Plaintiff and the aggrieved employees to perform off-the-clock work.

50. As a result of Defendants' policies and practices, Plaintiff and the aggrieved employees were not paid for all hours worked.

**Vacation Pay**

51. Plaintiff and the aggrieved employees accrued vacation wages during their employment with Defendants.

52. Under California law, vacation wages are considered a form of wages under Labor Code section 200. Vested vacation pay and other similar forms of paid time off earned based on labor performed are considered wages that cannot be subject to forfeiture without compensation for forfeited days at the applicable rates required by law.

53. At all relevant times, Defendants maintained policies that provide for the unlawful forfeiture of vested vacation pay in violation of Labor Code section 227.3 and *Suastez v. Plastic Dress-Up Co.*, (1982) 31 Cal. 3d 774.

54. Plaintiff and the aggrieved employees are entitled to vacation accrued during their employment with Defendants. Upon termination, Plaintiff and the aggrieved employees were not paid out all accrued vacation pay.

**Regular Rate of Pay**

55. The regular rate of pay under California law includes all remuneration for employment paid to, on behalf of, the employee. This requirement includes, but is not limited, to, commissions and non-discretionary bonuses.

56. During the applicable limitations period, Defendants violated the rights of Plaintiff and the aggrieved employees under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked in violation of Labor Code §§ 510, 1194, and 1198 as a result of not correctly calculating their regular rate of pay to include all applicable remuneration, including, but not limited to, non-discretionary bonuses and/or shift differential pay.

**Wage Statements**

57. Plaintiff and the aggrieved employees were not provided with accurate wage

statements as mandated by law pursuant to Labor Code section 226.

58. Defendants failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that: all hours worked, including overtime, were not included.

59. Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that: all hours worked, including overtime, were not included.

60. Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that: all hours worked, including overtime, were not included.

61. Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that: all hours worked, including overtime, were not included.

**FIRST CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS**

**(Lab. Code §§ 004, 223, 226.7, 512 and 1198)**

**(Plaintiff and Meal Period Sub-Class)**

62. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully alleged herein.

63. At all relevant times, Plaintiff and the **Meal Period Sub-Class** members have been non-exempt employees of Defendant entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order.

64. Labor Code section 512 and Section 11 of the applicable Industrial Welfare Commission Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period of ten hours.

65. Labor Code section 226.7 and Section 11 of the applicable Industrial Welfare Commission Wage Order ("Wage Order") both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

66. Compensation for missed meal periods constitutes wages within the meaning of Labor Code section 200.

67. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the applicable Wage Order.

68. Section 11 of the applicable Wage Order states:

> "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

69. At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement. Plaintiff is informed and believes that, at all relevant times, **Meal Period Sub-Class** members were not subject to valid on-duty meal period agreements with Defendants.

70. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 ad the applicable Wage Order.

71. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of failing to pay premium wages to **Meal Period Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

72. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour for a meal

period from the paychecks of **Meal Period Sub-Class** members on each day they worked, regardless of whether or not they were able to take an uninterrupted, duty-free meal period.

73. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the **Meal Period Sub-Class** with a second meal period when they worked shifts of ten or more hours and failed to pay them premium wages as required by Labor Code 512 and the applicable Wage Order.

74. At all relevant times, Defendants failed to pay Plaintiff and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

75. Pursuant to Labor Code section 204, 218.6 and 226.7, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

76. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members, seek to recover reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

## FAILURE TO PROVIDE REST PERIODS

**(Lab. Code §§ 204, 223, 226.7 and 1198)**

**(Plaintiff and Rest Period Sub-Class)**

77. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

78. At all relevant times, Plaintiff and the **Rest Period Sub-Class** members have been non-exempt employees of Defendants entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

79. Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

80. Labor Code section 226.7 and Section 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s).

81. Compensation for missed rest periods constitutes wages within the meaning of Labor Code section 200.

82. Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

83. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the **Rest Period Sub-Class** with net rest period of at least ten minutes for each four hour work period, or major fraction thereof, as required by the applicable Wage Order.

84. At all relevant times, Defendants failed to pay Plaintiff and the **Rest Period Sub-Class** members additional premium wages when required rest periods were not provided.

85. Specifically, Defendants written policies do not provide that employees may take a rest period for each four hours worked, or major fraction thereof, and that rest periods should be taken in the middle of each work period insofar as practicable.

86. Pursuant to Labor Code section 204, 218.6 and 226.7, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

87. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members, seek to recover reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

**FAILURE TO PAY HOURLY AND OVERTIME WAGES**

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(Plaintiff and Hourly Employee Class)**

88. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged

herein.

89. At all relevant times, Plaintiff and **Hourly Employee Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Order.

90. Section 2 of the applicable Wage Order defines “hours worked” as “the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.”

91. Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consist of all hours that an employer has actual or constructive knowledge that employees are working.

92. Labor Code section 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

93. Labor Code section 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

94. Labor Code section 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

95. Labor Code section 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent or employee of another person, to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

96. Labor Code section 1198 makes it unlawful for employers to employ employees under conditions that violate the applicable Wage Order.

97. Labor Code section 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

98. Labor Code section 223 makes it unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages.

99. Labor Code section 510 and Section 3 of the applicable Wage Order require employees to pay non-exempt employees overtime wages of no less than one and one-half times their respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and/or for the first eight hours worked on the seventh consecutive day of one workweek.

100. Labor Code section 510 and Section 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times their respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during the workweek.

101. Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to him and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

102. At all relevant times, Defendants failed to pay hourly wages to Plaintiff and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

103. At all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour from Plaintiff's timecard on every workday for a meal period, regardless of whether or not Plaintiff was provided with a meal period.

104. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour from **Hourly Employee Class** members' timecard on every workday for a meal period, regardless of whether or not **Hourly Employee Class** members were provided with a meal period.

105. As a result of Defendants' policy or practice of automatically deducting one-half hour from employees' timecards for every workday for a meal period, Plaintiff and **Hourly Employee Class** members were required to perform off-the-clock work that Defendants either knew or should have known they were working.

106. At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time worked, including but not limited to, overtime wages at statutory and/or agreed rates by suffering or permitting him to work during unpaid meal periods and/or failing to properly pay Plaintiff for all overtime hours worked.

107. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not paying hourly wages to **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates by suffering or permitting them to work during unpaid meal periods.

108. Section 9 of the applicable Wage Order states:

> "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term 'uniform' includes wearing apparel and accessories of distinctive design or color."

109. If the employer does not choose to maintain employees' uniforms itself where it is required to do so, the Division of Labor Standards Enforcement ("DLSE") takes the position that the employer may pay each affected employee a weekly maintenance allowance of an hour's pay at the state minimum wage rate in lieu of maintaining the uniforms, assuming that an hour is a realistic estimate of the time involved in maintaining the uniform.

110. At all relevant times during the applicable limitations period, and in violation of the above-referenced sections of the Labor Code and the applicable Wage Order, Defendants failed to compensate Plaintiff with minimum and/or overtime wages for all hours she worked as a result of its failure to maintain employee uniforms and/or pay him a weekly maintenance allowance.

111. Plaintiff is informed and believes that, at all relevant times, and in violation of the above-referenced sections of the Labor Code and the applicable Wage Order, Defendants failed to compensate **Hourly Employee Class** members with minimum and/or overtime wages for all hours they worked as a result of its failures to maintain employee uniforms and/or pay them a weekly maintenance allowance.

112. During the relevant time period, Defendants failed to pay Plaintiff and **Hourly Employee Class** members all earned wages every pay period at the correct rates, including

overtime rates, because Defendants directed, permitted or otherwise encouraged Plaintiff and **Hourly Employee Class** members to perform off-the-clock work.

113. As a result of Defendants' unlawful conduct, Plaintiff and **Hourly Employee Class** members have suffered damages in an amount, subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

114. Pursuant to Labor Code sections 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiff, on behalf of himself and **Hourly Employee Class** members, seek to recover unpaid straight time and overtime wages, interest thereon and costs of suit.

115. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Hourly Employee Class** members, seek to recover reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

## FAILURE TO PAY VACATION WAGES

**(Lab. Code § 227.3)**

**(Plaintiff and Vacation Pay Class)**

116. Plaintiffs incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

117. California Labor Code section 227.3 provides:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

118. At all relevant times during the applicable limitations period, Plaintiffs and members of the **Vacation Pay Class** accrued vacation time during their employment with Defendants.

119. As a result of their reimbursement policies and practices, Plaintiffs are informed and believes and thereon alleges that Defendants failed to reimburse him and **Vacation Pay Class** members for all accrued vacation wages.

120. By reason of the above, Plaintiffs and the members of the **Vacation Pay Class** are entitled to restitution for all unpaid amounts due and owing to within four years (4) of the date of the filing of the Complaint until the date of entry of judgment.

121. Plaintiffs, on behalf of themselves and the members of the **Vacation Pay Class**, seeks interest thereon pursuant to California Labor Code section 218.6, costs pursuant to California Labor Code section 218.6, and reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

**<u>FIFTH CAUSE OF ACTION</u>**

**FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS**

**(Lab. Code § 226)**

**(Plaintiff and Wage Statement Penalties Sub-Class)**

122. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

123. Labor Code section 226(a) states:

> "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least

> three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision."

124. The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion Letter July 6, 2006).

125. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to provide **Wage Statement Penalties Sub-Class** members with written wage statements as described above.

126. Plaintiff is informed and believes that Defendants' failure to provide him and **Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendants have the ability to provide them with accurate wage statements but have intentionally provided them with written wage statements that Defendants have known do not comply with Labor Code section 226(a).

127. Plaintiff and **Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated their legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

128. Pursuant to Labor Code section 226(e), Plaintiff, on behalf of himself and **Wage Statement Penalties Sub-Class** members, seek the greater of actual damages or $50.00 for the

initial pay period in which a violation of Labor Code section 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code section 226(a) occurred, not to exceed an aggregate penalty of $4000.00 per class member, as well as awards of reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**

**FAILURE TO TIMELY PAY ALL FINAL WAGES**

**(Lab. Code §§ 201-203)**

**(Plaintiff and Waiting Time Penalties Sub-Class)**

129. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

130. At all relevant times, Plaintiff and **Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with Defendants, to timely payment of all wages earned and unpaid before termination or resignation.

131. At all relevant times, pursuant to Labor Code section 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

132. At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving at least seventy-two (72) hours notice of resignation have been entitled to payment of all final wages at the time of resignation.

133. At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving less than seventy-two (72) hours notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours of giving notice of resignation.

134. During the applicable limitations period, Defendants failed to pay Plaintiff all of him final wages in accordance with the Labor Code by failing to timely pay him all of his final wages.

135. Plaintiff is informed and believes that, at all relevant time during the applicable limitations period, Defendants have failed to timely pay **Waiting Time Penalties Sub-Class** members all of their final wages in accordance with the Labor Code.

136. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have maintained a policy or practice of paying **Waiting Time**

**Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code sections 201 or 202 by failing to timely pay them all final wages.

137. Plaintiff is informed and believes and thereupon alleges that Defendants' failure to timely pay all final wages to him and **Waiting Time Penalties Sub-Class** members have been willful in that Defendants have the ability to pay final wages in accordance with Labor Code sections 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

138. Pursuant to Labor Code sections 203 and 218.6, Plaintiff, on behalf of himself and **Waiting Time Penalties Sub-Class** members, seek waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of thirty days, and interest thereon.

139. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of himself and **Waiting Time Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

## <u>SEVENTH CAUSE OF ACTION</u>

## UNFAIR COMPETITION

**(Bus. & Prof. Code §§ 17200 *et seq*.)**

**(Plaintiff and UCL Class)**

140. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

141. Business and Professions Code section 17200 defines "unfair competition" to include any unlawful business practice.

142. Business and Professions Code section 17203-17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure section 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

143. California law requires employers to pay hourly, non-exempt employees for all hours they are permitted or suffered to work, including hours that the employer knows or reasonable should know that employees have worked.

144. Plaintiff and the **UCL Class** members re-alleges and incorporates the FIRST, SECOND, THIRD, and FOURTH causes of action herein.

145. Plaintiff lost money or property as a result of the aforementioned unfair competition.

146. Defendants have or may have acquired money by means of unfair competition.

147. Plaintiff is informed and believes and thereupon alleges that by committing the Labor Code violations described in this Complaint, Defendants violated Labor Code sections 215, 216, 225, 226.6, 354, 408, 553, 1175, and 1199, which make it a misdemeanor to commit the Labor Code violations alleged herein.

148. Defendants have committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligations as an employer to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five or more hours, provide non-exempt employees with uninterrupted, duty-free rest periods of at least 10 minutes for each work period of four hours, and by failing to pay non-exempt employees for all hours worked.

149. At all relevant times, Plaintiff and **UCL Class** members have been non-exempt employees and entitled to the full protections of both the Labor Code and the applicable Wage Order.

150. Defendants' unlawful conduct as alleged in this Complaint amounts to and constitutes unfair competition within the meaning of Business and Professions Code section 17200 *et seq*. Business and Professions Code sections 17200 *et seq*. protects against unfair competition and allows a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful or fraudulent business practice to seek restitution on his own behalf and on behalf of similarly situated persons in a class action proceeding.

151. As a result of Defendants' violations of the Labor Code during the applicable limitations period, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages. Specifically, Plaintiff has lost money or property as a result of Defendants' conduct.

152. Plaintiff is informed and believes that other similarly situated persons have been

subject to the same unlawful policies or practices of Defendants.

153. Due to the unfair and unlawful business practices in violation of the Labor Code, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations.

154. California's Unfair Competition Law ("UCL") permits civil recovery and injunctive for "any unlawful, unfair or fraudulent business act or practice," including if a practice or act violates or is considered unlawful under any other state or federal law.

155. Accordingly, pursuant to Bus. & Prof. Code sections 17200 and 17203, Plaintiffs request the issuance of temporary, preliminary and permanent injunctive relief enjoining Defendants, and each of them, and their agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders; and upon a final hearing seek an order permanently enjoining Defendants, and each of them, and their respective agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders.

156. Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of himself and **UCL Class** members, seek declaratory relief and restitution of all monies rightfully belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

157. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

158. Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of himself and **UCL Class** members, seek declaratory relief and restitution of all monies rightfully belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

159. Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

**EIGHTH CAUSE OF ACTION**

**CIVIL PENALTIES**

**(Lab. Code §§ 2698 *et seq*.)**

**(Plaintiff, and on Behalf of All Aggrieved Employees)**

160. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

161. During the applicable limitations period, Defendants have violated Labor Code sections 201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 510, 512, 1194, 1197, and 1198.

162. Labor Code sections 2699(a) and (g) authorize an aggrieved employee, on behalf of herself and other current and former employees, to bring a representative civil action to recover civil penalties pursuant to the procedures set forth in Labor Code section 2699.3 that may, but need not, be brought or maintained as a class action pursuant to Code of Civil Procedure section 382.

163. Plaintiff, a former employee against who Defendants committed one or more of the alleged Labor Code violations during the applicable limitations period, is an aggrieved employee within the meaning of Labor Code section 2699(c).

164. Plaintiff has complied with the procedures for bringing suit specified in Labor Code section 2699.3.

165. Pursuant to Labor Code sections 2699(a) and (f), Plaintiff seeks the following civil penalties for Defendants' violations of Labor Code sections 201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 510, 512, 1194, 1197, and 1198:

A. For violations of Labor Code sections 201, 202, 203, 212, 226.7, 227.3, 1194, and 1198, $100 for each employee per pay period for each initial violation and $200 for each employee per pay period for each subsequent violation (penalties set by Labor Code section 2699(f)(2));

B. For violations of Labor Code section 203, a penalty in an amount not exceeding thirty days pay as waiting time (penalties set by Labor Code section 256);

C. For violations of Labor Code section 204, $100 for each employee for each

initial violation that was neither willful nor intentional, $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code section 210);

D. For violations of Labor Code section 223, $100 for each employee for each initial violation that was neither willful nor intentional, $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code section 225.5);

E. For violations of Labor Code section 226(a), if this action is deemed to be an initial citation, $250 for each employee for each violation. Alternatively, if an initial citation or its equivalent occurred before the filing of this action, $1,000 for each employee for each violation (penalties set by Labor Code section 226.3);

F. For violation of Labor Code sections 510 and 512, $50 for each employee for each initial pay period for which the employee was underpaid, and $100 for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code section 558);

G. For violations of Labor Code section 1197, $100 for each aggrieved employee for each initial violation of Labor Code section 1197 that was intentional, and $250 for each aggrieved employee per pay period for each subsequent violation of Labor Code section 1197, regardless of whether the

initial violation was intentional (penalties set by Labor Code section 1197.1);

H. Pursuant to Labor Code section 2699(g), Plaintiff seeks award of reasonable attorneys' fees and costs in connection with her claims for civil penalties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for relief and judgment against Defendants as follows:

(1) An order that the action be certified as a class action;

(2) An order that Plaintiff be appointed class representative;

(3) An order that counsel for Plaintiff be appointed class counsel;

(4) Unpaid wages;

(5) Actual damages;

(6) Liquidated damages;

(7) Restitution;

(8) Declaratory relief;

(9) Pre-judgment interest;

(10) Statutory penalties;

(11) Civil penalties

(12) Costs of suit;

(13) Reasonable attorneys' fees; and

(14) Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, all other similarly situated, and the general public, hereby demands a jury trial on all issues so triable.

DATED: December 22, 2022 SETAREH LAW GROUP

*/s/ Shaun Setareh*
SHAUN SETAREH
WILLIAM PAO

NOLAN DILTS
Attorneys for Plaintiff
KENNETH SMITH