UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH C. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>9W HALO WESTERN OPCO L.P., et al.,<br><br>Defendants. | Case No. 20-cv-01968-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO CERTIFY CLASS**<br><br>Re: Dkt. No. 130 |

Before the Court is Plaintiff's motion for class certification. ECF 130. The motion was heard before this Court on December 12, 2024. Having read the papers filed by the parties and carefully considered the arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **GRANTS IN PART AND DENIES IN PART** in part the motion for the following reasons.

## I.     BACKGROUND[1]

From approximately November 9, 2017, to May 6, 2019, Plaintiff Kenneth Smith worked as a non-exempt, hourly employee for Defendant 9W Halo Western OpCo L.P. dba Angelica ("Angelica"). Fourth Amended Complaint ("FAC") (ECF 114) ¶¶ 20, 22. Angelica maintained seven locations in California, which operated as industrial linen facilities. Plaintiff's Compendium of Evidence (ECF 130-1). Smith avers Angelica maintained a policy or practice of denying Smith and putative class members the full 30-minute meal breaks to which they are entitled under California law. FAC ¶ 31. This policy or practice consisted primarily of two parts.

---

[1] Courts "must take the substantive allegations of the complaint as true" but "need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action." *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 335 (N.D. Cal. 2010) (citation omitted).

1　First, Angelica released all employees for meal periods at the same time, causing employees to 2　have to wait in lines in order to clock in and out. FAC ¶ 28. As a result, employees' meal periods 3　were often shorter than 30 minutes. FAC ¶ 28. Second, Smith alleges Angelica's machinery 4　would frequently malfunction and its generator would often fail, causing all operations to cease 5　until the problem was resolved. FAC ¶ 29. When this occurred, Angelica told Smith and putative 6　class members that the time spent waiting for the facility's operations to resume counted as their 7　meal periods. FAC ¶ 29. Smith alleges Angelica had a policy of automatically deducting 30 8　minutes from its employees' paychecks, regardless of whether the employees took a meal break or 9　not. FAC ¶ 32.

10　Smith also alleges that employees' timesheets often did not reflect the actual amount of 11　time worked. FAC ¶¶ 35-36. The machines employees used to swipe their badges to clock in and 12　out of work regularly malfunctioned, requiring a manager to manually enter the time employees 13　arrived for work or ended their shift, which resulted in inaccurate timesheets. *Id.* Relatedly, when 14　the machinery would malfunction or the generator would shut down, Angelica would order Smith 15　and putative class members to wait for the facility to become operational again, and as a result 16　employees sometimes remained at the facility for eleven hours or more. FAC ¶ 41. In such 17　instances, employees were not compensated for the time spent waiting to return to work and their 18　timesheets did not reflect the interruptions, and they were entitled to, but did not receive, overtime 19　pay. FAC ¶¶ 41-42. Smith also alleges he regularly had so much work to complete that he was 20　unable to take a meal period of any length. Smith Decl. ¶ 10.

21　Smith filed this putative class action in Alameda County Superior Court on February 18, 22　2020, ECF 1-2 at 4, and Defendants removed the action on March 20, 2020, ECF 1 at 2. On May 23　11, 2023, Plaintiff filed the operative fourth amended complaint, asserting claims under California 24　law for (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay 25　hourly wages; (4) failure to pay vacation wages; (5) failure to provide accurate written wage 26　statements; (6) failure to timely pay all final wages; (7) unfair competition; and (8) civil penalties 27　under the Private Attorneys General Act ("PAGA"). FAC ¶¶ 58-161. Plaintiff moved for class 28　certification on May 2, 2024. ECF 130 ("Mot."). Angelica filed its opposition on May 16, 2024,

ECF 132, Plaintiff replied on May 23, 2024, ECF 133, and the hearing was held on December 12, 2024.

**II.    DISCUSSION**

Smith seeks certification of the following classes pursuant to Rule 23(b)(3):

> Recordkeeping Meal Period Class: All non-exempt, hourly employees of Defendants who worked a shift in excess of five hours for the time period beginning on September 26, 2017, through the date of final judgment, and whose timekeeping records reflect a late, shortened, or missed meal period.
>
> Auto-Deduct Class: All non-exempt, hourly employees of Defendants who worked a shift in excess of five hours for the time period beginning on September 26, 2017, through the date of final judgment, and who had a half-hour of time deducted from their pay on each shift.
>
> Second Meal Period Class: All non-exempt, hourly employees of Defendants who worked a shift in excess of ten hours for the time period beginning on September 26, 2017, through the date of final judgment.
>
> Overtime Class: All persons employed by Defendants in hourly or non-exempt positions in California who worked a shift greater than eight (8) hours, or who worked more than forty (40) hours during a given workweek during the time period beginning on September 26, 2017, through the date of final judgment.
>
> Off-the-Clock Class: All non-exempt, hourly employees of Defendants who worked a shift during the time period beginning on September 26, 2017, through the date of final judgment.

Mot. at 2.[2]

"Rule 23 of the Federal Rules of Civil Procedure governs class certification." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024). Class certification under Rule 23 involves two steps. "[A] class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b)." *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023). Rule 23(a) requires a showing that: (1) the

---

[2] Smith also seeks to certify a Wage Statement Penalties Class and Waiting Time Penalties Class, and asserts those classes are derivative of the five classes listed above. Mot. at 4 n.1. Consequently, Smith asserts that if the Court certifies any of those five classes, it should also certify the Wage Statement Penalties Class and Waiting Time Penalties Class. *Id.* However, Smith neither defined those classes nor has he otherwise explained why they pass muster under Rule 23. Thus, the Court declines to certify those classes at this time. *Black Lives Matter*, 113 F.4th at 1258.

3

1    class is so numerous that joinder of all members is impracticable; (2) there are questions of law or
2    fact common to the class; (3) the claims or defenses of the representative parties are typical of the
3    claims or defenses of the class; and (4) the representative parties will fairly and adequately protect
4    the interests of the class.  Fed. R. Civ. P. 23(a).  Among the actions listed in Rule 23(b) are those
5    in which "questions of law or fact common to class members predominate over any questions
6    affecting only individual members, and . . . a class action is superior to other available methods for
7    fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see Lytle v.*
8    *Nutramax Labs., Inc.*, --- F.4th ----, ----, 2024 WL 3915361, at *5 (9th Cir. Aug. 23, 2024).  The
9    rule "mandates that district courts 'rigorous[ly] analy[ze]' whether a proposed class meets various
10   requirements."  *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th
11   Cir. 2024) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)) (modifications in
12   original).

13   The class certification analysis "may entail some overlap with the merits of the plaintiff's
14   underlying claim," but "Rule 23 grants courts no license to engage in free-ranging merits inquiries
15   at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66
16   (2013) (internal quotations and citations omitted).  "Merits questions may be considered to the
17   extent – but only to the extent – that they are relevant to determining whether the Rule 23
18   prerequisites for class certification are satisfied."  *Id.*  To that end, "plaintiffs must 'affirmatively
19   demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites."
20   *Black Lives Matter*, 113 F.4th at 1258 (citing *White*, 104 F.4th at 1192).  They " 'must actually
21   prove – not simply plead – that their proposed class satisfies each requirement of Rule 23.' "  *Id.*

22   Smith argues he has satisfied Rule 23's requirements.  Angelica argues Plaintiff has not
23   shown commonality or predominance, typicality, Plaintiff's adequacy, or superiority.  *See* ECF
24   132.  The Court considers each of Rule 23's requirements in turn.

25   **A.  Numerosity**

26   Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members
27   individually is impracticable.  Fed. R. Civ. P. 23(a)(1).  "Although there is no exact number, some
28   courts have held that numerosity may be presumed when the class comprises forty or more

4

members." *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 543 (N.D. Cal. 2021) (internal quotations and citation omitted). Here, there are 2,967 putative class members, and the proposed class is sufficiently numerous. Angelica does not dispute this.

### B. Commonality and Predominance

Next, the Court considers the commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b). Because "[t]he requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a)," *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022), the Court considers them together.

Rule 23(a)(3) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the common question must be "capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do." *Id.* at 359 (internal quotations omitted). "The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Dukes*, 564 U.S. at 350).

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." *See* Fed. R. Civ. P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (internal quotations and citations omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be

1  tried separately, such as damages or some affirmative defenses peculiar to some individual class
2  members." *Id.* "Considering whether 'questions of law or fact common to class members
3  predominate' begins, of course, with the elements of the underlying cause of action." *Erica P.*
4  *John Fund, Inc., v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

5         The Court first considers Plaintiff's argument that commonality and predominance are
6  satisfied for the Recordkeeping Meal Period Class, Auto-Deduct Class, and Second Meal Period
7  Class (collectively, "Meal Period Classes") because those classes require engaging the same legal
8  analysis. The Court then turns to the Overtime and Off-the-Clock Classes.

9         Smith alleges that, in violation of California Labor Code § 512, he and putative class
10 members were denied 30-minute meal breaks because they had to wait in lines while clocking in
11 or out, or because of demanding workloads. Smith also alleges that when employees were denied
12 an adequate meal break, a 30-minute meal break was deducted from the employees' timesheets
13 nonetheless, in contravention of California Labor Code § 226.7(c). Defendants assert that
14 employees who did not take meal breaks waived those breaks, pointing to declarations by former
15 Angelica employees who attest that any meal period lasting fewer than 30 minutes was due to their
16 "voluntary choice." ECF 132 at 17-18.

17        To establish commonality regarding the Meal Period Classes, Smith relies on a California
18 Supreme Court case, *Donohue v. AMN Services*, 11 Cal. 5th 58 (2021), which sets forth a
19 rebuttable presumption of meal period violations. ECF 130 at 22-24. Rather than requiring a
20 plaintiff to disprove that they waived a meal period, "the burden is on the employer, as the party
21 asserting waiver, to plead and prove it." *Donohue*, 11 Cal. 5th at 75-76. A defendant may contest
22 the presumption by "presenting evidence that employees were compensated for noncompliant
23 meal periods or that they had in fact been provided compliant meal periods during which they
24 chose to work," such as representative testimony, surveys, and statistical analysis. *Id.* at 77.

25        Here, Smith has established that the *Donohue* presumption applies. Smith's expert, James
26 Toney, reviewed the timekeeping and payroll records Angelica produced and concluded that out of
27 the sampled shifts eligible for a meal break, 6.2% showed a missed first meal break, 8.9% showed
28 a late first meal break, and 42.2% showed a short first meal break. ECF 130-4 at 6. Toney further

estimated 3.7% of shifts showed a missed second meal break.  *Id.*  Smith's expert identified presumptive meal break violations in more than half of the records examined, which suffices to invoke the *Donohue* presumption.  *See Garcia v. Cent. Coast Restaurants, Inc.*, No. 18-CV-02370-RS, 2022 WL 657972, at *6 (N.D. Cal. Mar. 4, 2022) ("[T]hat records show 17% of shifts show a possible meal period violation is sufficient to invoke the presumption from *Donohue*.").  Smith additionally presents ten declarations from former Angelica employees, who attest they were at times unable to take a 30-minute meal break due to their workload.  *See* ECF 130-1 (Exhibits 9-18).  However, Smith has not sufficiently explained why the presumption applies for the Second Meal Period Class, as Toney estimated under 4% possible second meal break violations, and thus Smith has not satisfied his burden of showing the presumption applies for the Second Meal Period claims.

        Angelica has not rebutted the presumption as to Smith's Recordkeeping Meal Period and Auto-Deduct Classes.  It has not put forth its own expert to provide another estimate of potential meal break violations or contest Toney's estimate, and instead presents eleven declarations from former employees asserting that any meal period they skipped in the course of their employment was skipped voluntarily.  *See* ECF 132-1 at 84-180.  However, Angelica has provided the Court with no reason to conclude that these declarations are representative and thus cannot rebut the presumption on their basis alone.  *See Garcia v. Cent. Coast Restaurants, Inc.*, No. 18-CV-02370-RS, 2022 WL 657972, at *6 (N.D. Cal. Mar. 4, 2022) (finding five declarations, "when considering the thousands of potential members of the proposed class, can hardly be considered representative and are insufficient to rebut the *Donohue* presumption at this time"); *see also McCollum v. TGI Fridays Inc.*, No. 8:22-CV-00392-FWS-JDE, 2024 WL 5423064, at *12 (C.D. Cal. Mar. 6, 2024) (finding twelve declarations from current employees and eight declarations of managers insufficient to rebut the *Donohue* presumption where 99.3% of employee shifts showed a meal period violation and the proposed class consisted of over 3,000 employees).  In sum, Smith has established a presumption of meal break violations from Angelica employees' records and thus has demonstrated commonality and predominance as to the Recordkeeping Meal Period and Auto-Deduct Classes.

7

The Court next considers whether Smith has established commonality and predominance as to the Overtime Class and Off-the-Clock Class. Smith alleges Angelica violated California Industrial Welfare Commission ("IWC") Wage Order 6, which requires an employer to pay at least minimum wage for all hours worked and to pay overtime rates for hours worked in excess of eight hours in any workday or six days in any workweek. *See* IWC Wage Order 6 § 3(A)(1), 4. Unlike with the meal period classes, where the employer must rebut the presumption of wage violations, there is no presumptive violation regarding overtime pay. Smith must show more than that the putative class members "suffered a violation of the same provision of law," *Dukes*, 564 U.S. at 350 (internal quotations and citations omitted), but rather that Angelica "should have known that its employees were regularly working off-the-clock as a result of its policies regarding the reporting of overtime," *Williams v. Super. Ct.*, 221 Cal. App. 4th 1353, 1366 (Dec. 24, 2013). Angelica argues there is no common question uniting the Overtime and Off-the-Clock Classes because Smith has not shown why employees were not compensated proper overtime. ECF 132 at 21. Smith has alleged that he and the putative class members suffered violations of relevant law governing overtime pay, but he has not established that Angelica had a policy of not paying its employees overtime rates. Rather, Smith has presented "anecdotal evidence of a handful of individual instances" of off-the clock work, *Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1052 (2012) – i.e., declarations describing several varied reasons individuals worked overtime or off the clock. This falls short of demonstrating a question that "could be shown through common proof." *Id.*

In sum, the Court concludes a common question predominates as to Smith's Recordkeeping Meal Period Class and Auto-Deduct Class. However, because it finds Smith has failed to satisfy commonality or predominance as to the Second Meal Period, Overtime, and Off-the-Clock Classes, the Court **DENIES** Smith's motion to certify them and need not determine whether Smith has shown typicality, adequacy, or superiority with regard to those classes.

### C. Typicality and Adequacy

The Court must next determine whether Smith has demonstrated typicality and adequacy for the Recordkeeping Meal Period Class and the Auto-Deduct Class. As the parties analyze the

8

two requirements together, so does the Court. Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.4 (N.D. Cal. 2020) (quoting *Ellis*, 657 F.3d at 984). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). "Typicality may be lacking if there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it." *Vizcarra*, 339 F.R.D. at 550 (citation and internal quotations omitted; modification in original). Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requires inquiry into whether the plaintiff and its counsel have any conflicts of interest with other class members, and whether the plaintiff and its counsel will prosecute the action vigorously on behalf of the class."[3] *Vizcarra*, 339 F.R.D. at 550 (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

Smith argues he is typical of the other Recordkeeping Meal Period Class and Auto-Deduct Class members because he worked a shift in excess of five hours after September 26, 2017 and experienced a late, shortened, or missed meal period and he had time automatically deducted from his timesheet despite not taking a meal period. ECF 130 at 20. Smith argues he is an adequate class representative as he was subjected to the same policies and practices as putative class members and thus was harmed by the same conduct and asserts the same claims for relief. ECF 130 at 26. Angelica argues Smith's meal period claims are not typical of putative class members

---

[3] Angelica does not dispute the adequacy of Smith's counsel. Smith argues his chosen counsel is adequate because they do not have conflicts with members of the class and have been vigorously prosecuting the action since the beginning. ECF 130 at 27. His counsel submit that they are experienced in litigating complex class actions, have dedicated resources to litigating this case on behalf of Plaintiff and class members, and will continue to do so through trial and appeals. ECF 130-2. The Court finds this sufficient. *See Vizcarra*, 339 F.R.D. at 550.

who were employed in different roles, worked at different locations, and had different schedules from him. ECF 132 at 22-23. For example, Angelica argues Smith is the only declarant who alleges having to wait in long lines to clock out and in for meal periods, and that his allegation that he was forced to miss at least one period each week due to volume of work is unique because it was Angelica's practice to release all employees within a crew at the same time. *Id.* Angelica further argues Smith did not allege that his meal periods were ever cut short due to interruptions. *Id.* However, typical does not mean "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, at 1020 (9th Cir. 1998). Because Smith's claims about noncompliant meal periods are "reasonably co-extensive with those of absent class members," *id.*, the Court concludes they are typical for the class.

Angelica also argues Smith cannot be an adequate representative because the putative class includes supervisors, and Smith alleges supervisors prevented putative class members from taking meal periods due to heavy workloads, thus certification is improper as members of the putative class include supervisory personnel who implemented the allegedly unlawful practice. ECF 132 (citing *Howard v. CVS Caremark Corp.*, No. 13-cv-05758, 2014 WL 11497793, at *14 (C.D. Cal. Dec. 19, 2014), *aff'd*, 628 F. App'x 537 (9th Cir. 2016)). Smith does not contest this, asserting instead that this need not destroy adequacy and typicality for the entire class, and that the Court can modify the class to exclude any non-exempt employees who held managerial or supervisory roles, ECF 133 at 7-8; a point Smith reiterated at the hearing. Thus, the Court finds Smith has shown typicality and adequacy except as to any putative class members who served in supervisory or managerial roles, and consequently modifies the class definitions as set forth in the Conclusion.

**D. Superiority**

Finally, the Court must consider the question of superiority. Class certification under Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In deciding whether the superiority requirement is met, courts consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the

10

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.* "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1235 (9th Cir. 1996). The parties' engagement with the superiority factor is minimal, but the Court nonetheless can find a class action is superior in this case. Angelica's principal objection as to superiority is about the fourth factor. It argues that individualized assessments as to liability and damages would be required, which would make managing the class action difficult. ECF 132 at 24-25. However, because the superiority factor "overlaps with the Court's commonality, typicality, and predominance analysis," *Nucci v. Rite Aid Corp.*, No. 19-CV-01434-LHK, 2020 WL 3187335, at *20 (N.D. Cal. June 14, 2020), as it depends largely on whether Smith's case "rises and falls [on] common evidence," *In re High-Tech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167, 1228 (N.D. Cal. 2013), this factor weighs in favor of certification.

   Angelica does not dispute the other superiority factors. The first factor weighs in favor of certification, as the Ninth Circuit has noted that where, like here, "damages suffered by each putative class member are not large," the "interest of each member in individually controlling the prosecution or defense of separate actions . . . weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190 (internal quotation marks omitted). The second factor weighs in favor of certification as well, as "the Court is not aware of any other actions against Defendant related to the claims at issue in the instant case." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. at 374. Finally, as to the desirability of concentrating the litigation in a particular forum, the Court concludes "there is no reason to believe that concentrating this action in this Court is undesirable, especially considering that the challenge is under California law, and the proposed class is composed of only hourly employees in California." *See McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011). Therefore, having weighed the four factors, the Court determines the superiority requirement is satisfied here. Thus, Rule 23(a) and Rule 23(b)(3) have been satisfied as to Smith's Recordkeeping Meal Period Class and Auto-Deduct Class.

//

**III.   CONCLUSION**

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for class certification.  The Court **CERTIFIES** the following Rule 23(b)(3) classes:

> Recordkeeping Meal Period Class: All non-exempt, hourly employees of Defendants, excluding those in supervisory or managerial roles, who worked a shift in excess of five hours for the time period beginning on September 26, 2017, through the date of final judgment, and whose timekeeping records reflect a late, shortened, or missed meal period.

> Auto-Deduct Class: All non-exempt, hourly employees of Defendants, excluding those in supervisory or managerial roles who worked a shift in excess of five hours for the time period beginning on September 26, 2017, through the date of final judgment, and who had a half-hour of time deducted from their pay on each shift.

The Court **DENIES** Smith's motion to certify a Second Meal Period Class, Overtime Class, and Off-the-Clock Class.  The Court sets a further case management conference for May 15, 2025 at 10:00 a.m.  The parties **SHALL FILE** a further case management conference statement, compliant with Civil Local Rule 16-10(d), by noon on May 8, 2025.

**IT IS SO ORDERED.**

Dated: March 28, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**